We'll call the next case, Bin Raid Best Wall, LLC. Judge Jordan and may it please the court, Noel Francisco for Best Wall and if I After extensive litigation, a federal bankruptcy court issued an order under Bankruptcy Rule 2004 authorizing the subpoenas that issue here so that it could decide if Best Wall's past settlements are an accurate basis to estimate current and future asbestos liability. We're all over that. Sure. We're with you. So let's just dive into questions. All right, Mr. Francisco. Sure, Your Honor. Would you start with the argument from the other side that Rule 45 is incorporated into Rule 2004 for a reason. It's meant to give an opportunity for the court where the subpoena would be enforced to do some measurement and a calculation about burden and that's in the design and you're fighting the design. What's your response?  First of all, I don't think it goes to the core problems with what the district court did here. First, it doesn't address the issue preclusion problem and second, it doesn't address the district court's erroneous belief that its decision was somehow compelled by the access ruling. I don't think access is applicable at all, but if anything, it supports us. Remember, in the access case, the district court actually gave the parties their essentially unrestricted access to data as long as they limited their use of it to the bankruptcy proceeding itself and that's all we're seeking to do here. But, to address your question directly, I think that the court's Simon decision is somewhat instructive in this area because what it says is that when you have two overlapping sets of rules, the goal here is to reconcile them, not to read them to be at war with one another. And in fact, here, I don't think there's any conflict at all. Both sets of rules make clear that the courts are to take into account the privacy interests. They're at the heart of this litigation and indeed, that's what the bankruptcy court did over multiple months of litigation, including expert reports, expert depositions, a full-blown hearing, an oral ruling, and a written ruling. Is the position that the local court could never have a disagreement with the issuing court because if the issuing court thought about it, the local court is not entitled by Rule 45 to make a decision? Not in the slightest, Your Honor. I think our argument is that whereas here, you've got a full-blown bankruptcy court proceeding that takes into account the very thing it issued, the privacy concerns, when you try to quash that duly authorized subpoena in a different district court, the standard of review is, did the bankruptcy court somehow abuse its discretion? Had they taken a direct appeal to the district court in North Carolina of this fully litigated 2004 order, that would have been the standard. And there's no reason why there should be a different standard when they seek the exact same relief from a district court in Delaware. I'd emphasize, I think it's all pretty academic in this particular case, because in this particular case, there are far more fundamental errors than the standard of review. Right, and we'll get to the preclusion issues in a minute. Was it proper for the district court to get into privacy and all that? Because unlike Rule 45, Rule 2004 doesn't talk about privacy and privilege and so on. Isn't the bar for a Rule 2004 examination different than it is for a Rule 45 motion to quash? So a couple parts of your question, Your Honor. I think it is appropriate for the district court to take into account the privacy concerns as part of its abuse of discretion review. In terms of the differences between 45 and 2004, I don't think they're different in a way that matters to this case. Because in this case, both of them allow privacy concerns to be taken into account. And in fact, privacy concerns were taken into account by the bankruptcy court. That was the principal issue before the bankruptcy court. In a different case, if you actually did have a conflict between the two rules, I think what the Simon decision says is that the bankruptcy rules win because they're the more specific and reticulated set of rules. So let's say you had a subpoena that was fully and duly authorized by Rule 2004, but somehow ran afoul of the restrictions of 45. You have to apply Rule 2004 unless you're going to nullify the extent to which the bankruptcy rules accord broader discovery. And that's what the Simon decision says you never do. That's why Simon in fact held that the FDCPA's mini Miranda requirement was precluded, because you did in fact have that conflict between a general federal statute and the more reticulated bankruptcy regime. Here, again, I think it's all academic because here, everybody agrees that the privacy interests were at the heart of the litigation before the bankruptcy court,  said that it's going to impose a lot of restrictions to protect privacy, but not these particular ones. All right, let's get to the issue of preclusion then. It appears that you've got two arguments. There's the agency argument. There's the issue of preclusion, race judicata argument. As to the latter, it looked like it didn't get to the question of privity between the trusts and the facility until your reply brief in front of us. Maybe I'm wrong about that. Well, you're right. It looked like you were arguing. Yeah. Did you in some fashion fail to preserve your argument that issue preclusion should exist here because there's a privity between the facility and the trust? No, Your Honor. Privity, agency, fiduciary status, I think it's all just different ways of getting at the same thing. What we have consistently argued, including before the district court below, is that they are barred from collaterally attacking the order because they're bound by it by virtue of the presence of the facility acting as their fiduciary. And what I would say here is that we effectively have a series of stipulations that establish that fiduciary status. One of them is the one that you cited in your letter of last week where the facility essentially conceded that it was there representing the interest of the trust. But here we have things from everybody's mouth, not just the facility's mouth, the trust's mouth, the matching claimant's mouth. Here's what the trust said in opposition to our motion to transfer in the district court, page 394 of the joint appendix. DCPF's request, and it was referring to its opposition to our motion to transfer in the bankruptcy court, DCPF's request was consistent with its duty under its agreement with the trust to use its best efforts to ensure that such information will be treated as confidential by all who receive it. Now, wait a second. Pause on that because I'm expecting your opposing counsel to get up and say something like, that's a statement about the facility's responsibility to claimants. It's not a statement about its relationship with us. What's your answer to that? Well, Your Honor, this is about DCPF's request was consistent with its duty under its agreement with the trust to use its best efforts to safeguard the confidentiality of the data. So I think it is talking about the trust's duty and the facility's duty to the trust. When you get to the matching claimants, here's what the matching claimants say in their brief to this court, page 12. The district court acknowledged that facility had a duty to the trust to use its best efforts to protect the confidentiality of trust information and that the trust in turn has fiduciary duties and fiduciary obligations to the matching claimants to protect the confidentiality of their information. And I think that's why when you get to the district court's ruling here, and this is at page 10 of the joint appendix, the district court itself made clear that the DCPF's request, and again it was its request to the bankruptcy court, was consistent with its duty under its claims processing agreement with the trust to use its best efforts to protect the confidentiality of the data. Why isn't that simply a contractual duty? And when you have the burden to show that there's some agency or privity, what do we do with the fact that you haven't put in the record, that I can tell, either the claims processing agreement or the trust agreements? Well, for sure, Your Honor, it is a contractual duty, and that is what exactly gives rise to the fiduciary relationship. The fact that the facility had a contractual duty to represent the trust's interests and the matching claimants' interests before the bankruptcy court. That's why there's a fiduciary relationship here. You're correct that we don't have the... Every contract is a fiduciary relationship. That's, I think, what you're being asked is, how does the existence of the contract give rise to a fiduciary relationship? For sure, not every contract is a fiduciary relationship. But when, as the district court here found, your duty under the contract is to protect the trust's interest in the confidentiality of the data, then when you do show up and protect the trust's interest in the confidentiality of the data, you are their fiduciary in the context of issue preclusion when the trust then go to court number two and assert the exact same privacy interest. I would submit to you that that is a quintessential fiduciary relationship when it comes to... Where's the contract that spells that out? Well, Your Honor, we don't have the contract in this record. That's why I started out by saying what you have here is effectively a series of stipulations, because what I just said, nobody disputes. It's in the trust's mouth, it's in the matching claimant's mouth, and it's in the district court's mouth. So respectfully, I don't think that you need the contracts here when everybody has stipulated as to what those contracts effectively say. Their principal argument, by the way, hasn't really been this. It's been some kind of waiver issue. But I think it's quite clear that we have put them on notice of the substance of our argument. Well, we've got our Joseph case, which says it's not enough for you to sort of generally raise something. You have to specify your argument. You can't say you're precluded. You've got to say why somebody's precluded, right? Well, I think that what you have to do is put them on notice of the substance of the argument. And respectively, I think that the best case in this area is an opinion called TD Bank, which Judge Krause authored for the court a couple of years ago. That was a case where you had a dispute between an employer and an employee over who owned the rights to a book. In the district court, the employer said it owned the rights because it was a quote-unquote work-for-hire. In the court of appeals, it said it owned the rights because the employee had actually assigned to it the rights. And what the court held was that that second issue wasn't waived because it was closely related to the first. With respect here, I'd argue we're making the exact same argument. And I'll read exactly to you the argument we made in the district court. It's at page 323 of the joint appendix. The last point I want to emphasize, because my time is running low, is that while I think that the issue preclusion argument is dead-bang right and the easiest path out of the woods, at a bare minimum, the district court here erred when it concluded that its decision was somehow compelled by access. Did it say it was compelled by access? It did. This is at page 21 of the joint appendix. After the entire discussion of access, the only thing it discussed in the relevant portion of its motion to quash, it said, quote, it appears that additional safeguards must be included in order to comply with the previous protections granted by the bankruptcy court in those cases, referring to the access cases. Would it have been adequate for the court, would it have been abusive for the court, to impose those same safeguards without citing access? Your Honor, had it done that, I guess I'd be having a different abusive discretion argument over what it did consider. Having cited access, I would argue that even if it thought that access was informative and informed the basis of its ruling, it would clearly be wrong, because if anything, access inexorably supports our position in this case. In access, the court actually gave Ford and Honeywell virtually unrestricted access to massive amounts of confidential information, hundreds of thousands of files with medical records. The only thing at issue in that case was whether Ford and Honeywell could use it for things other than bankruptcy, like lobbying. We don't want to use it for anything other than bankruptcy. We only want to use it for lobbying. So if you think access has anything to do with this case, then I think it clearly supports us. So this is one of these cases where you have, in my view, abusive discretion at every turn. On issue preclusion, on access, on its failure to even discuss Rule 45 in the relevant portion of its opinion, its failure to even discuss Rule 2004 in the relevant portion of its opinion, its failure to even acknowledge the existence of a fully litigated bankruptcy proceeding. There are many, many different ways why the district court got it wrong here. I'd submit the quickest way out of the woods is the issue preclusion issue. On issue preclusion, what's your response if we find that the considerations behind Rule 2004 are just different than the ones behind Rule 45? So the issues presented, the answers given just aren't the same. How is it issue preclusion? So my answer is twofold. First, I would fight with the premise, but I'm not going to fight with the premise here. Under Simon, the more specific 2004 bankruptcy rules govern. Because if, as I think your question is positing, 2004 gives broader range of discovery than Rule 445, then if you say that every time a subpoena fully satisfies Rule 2004 under its broader requirements, you're going to quash it under Rule 445's narrower requirements, what you've done is you've interpreted Rule 445 to nullify the extent to which the bankruptcy rules do in fact give parties more discovery than you get in ordinary civil rules. And going back to the Simon case, what the Simon case says is when you have that kind of conflict, first you should try to reconcile them, and that's why I don't think that you ever even get to this issue. But if you can't, it's the more specific bankruptcy rules that have to govern, precisely why it held that the FDCPA's mini Miranda requirement was precluded by the bankruptcy rules. Why does it nullify? I mean, there's plenty of cases where the application of Rule 445's standards still allows an examination subpoena to stand. But if 2004 is focused on the scope of the examination and basic relevance considerations with a sort of generalized balancing test, isn't that fundamentally different than what the court is to look at when it comes to Rule 445 and specific issues such as privilege? My first answer is no, because both rules fully allow courts to take into account privilege, privacy, and burden. That's why we spent two months litigating this thing in the bankruptcy court, these exact same issues. But secondly, I do think that you are, if you actually did have a conflict, a case other than this one, where you actually did have the conflict, you are nullifying the bankruptcy rules, because everybody here agrees that at least in some context, bankruptcy gives parties a broader range of discovery. And that's because we don't apply the ordinary Rule 26 rule of relevancy and bankruptcy proceedings. We rather have a broader concept of relevancy when it comes to bankruptcy to allow bankruptcy courts to get to the bottom of the issues. If you say that every time something is within the broad scope that's authorized by the bankruptcy rules, it's then quashed because it's not within the narrower scope of the federal rules. You have, in fact, negated the extent to which the bankruptcy rules have a broader scope. You've interpreted them to be no different, effectively, than the federal rules of civil procedure themselves. Now, again, that's not an issue in this case. But if it is... One of those is relevance, and the other is looking at the things that are specified in Rule 45. How are those the same? Well, first of all, Your Honor, I think that Rule 2004 does allow bankruptcy courts to take into account all the things in Rule 45. That's what the bankruptcy court did here. What part of Rule 2004 are you looking at? It's not spelled out in 2004, but if you look at bankruptcy court cases, they regularly take into account burden, privilege, privacy, and I'd point you to this particular case. The principal issue that we litigated in the bankruptcy court proceeding was the very privacy issue at issue here. I think what's underlying these questions is whether the bankruptcy court should have done that, rather than just having a sort of relevance-type examination. Well, I think the bankruptcy court, in fact, did do that. Are you suggesting the bankruptcy court should not have done that? Right, that the bankruptcy court was essentially having a Rule 45 hearing rather than a Rule 2004 hearing. I think that there's a Ninth Circuit case on this issue as well. It basically says that Rule 2004 is sufficiently capacious, that you ought to be taking into account the types of things that courts typically take into account in discovery. There's nothing in Rule 2004 that talks about privilege, but I think bankruptcy courts routinely are going to protect privileged information. If you go on to a bankruptcy court and you establish that the information is relevant, but it's going to cost some third party $3 billion to comply, and it's only kind of relevant, I think usually a bankruptcy court is going to say, I'm not going to allow that, there's too much of a burden. So there's nothing in the bankruptcy courts that preclude that consideration. It may be that in some cases down the road you've got to deal with these tougher issues, but this is a pretty easy case, because here the bankruptcy court did, in fact, consider the very issue that they're claiming should have been considered. But show us where that same issue is, because the issue, as I understand it, that was argued was surely privacy, but it was that there was confidential commercial documents. And that's very different, even different in the treatment under Rule 45, than privilege as a result of documents being turned over in the context of settlement. Where is there discussion or consideration by the bankruptcy court about privilege? Well, Your Honor, I don't think that they've ever asserted any of the documents at issue that we're fighting about are privileged. I think what they have always asserted, both in the bankruptcy court and in the district court below, was that the privacy considerations at issue here are what warranted the additional protections that they wanted. Isn't the consideration here under Rule 45 the mandatory quashing or modification of a subpoena based on privilege, and that privilege being one that arises from the data being guarded by a settlement? Again, Your Honor, respectfully, I don't think that the issue is whether we're talking about privileged documents. I don't think anybody has asserted privilege. They've asserted that these are sensitive documents. They have private information in them, and therefore they ought to be protected under general privacy concerns. But nobody has asserted, at least as far as I know, attorney-client privilege or any similar type of privilege. And as Your Honor knows, courts don't interpret privileges broadly. You interpret privileges narrowly. Here, the issues that were argued to the district court are essentially the same as the issues that were argued to the bankruptcy court, that given the sensitive nature of these documents, they ought to be protected. I underscore that, well, I agree that the information is sensitive to a certain extent. It's not sensitive to the extent of the documents that were at issue in the access case. Access was talking about medical records and very sensitive information. Here, we're talking about fields in a database that, to be sure, ought to have safeguards on them, and the bankruptcy court adopted those safeguards, but they're not the type of information that was issued in access, which, after all, the court authorized in the access decision. I guess I'm looking at the joint appendix, joint appendix 8, for example, that sets out that the TDPs are providing for submission to the trust of this data to be treated as made in the course of settlement discussions and protected by all applicable privileges, including those applicable to settlement discussions. Well, Your Honor, so sure, I think that it acknowledges that they could assert a privilege over the information, but that's not what's been at stake in either the bankruptcy court or the district court. The district court certainly didn't discuss privilege. So even if you thought that that was a ground here, you still need to reverse, because I don't see any discussion of privilege in the district court either. But in these proceedings, my understanding is that they have not asserted that the information is privileged. They've asserted that the information is private and needs to be protected. I could be wrong on that. I could be wrong on that, but that's my understanding. When the district court didn't discuss it, she's disclosed it from the district court. That's the district court's language. The TDPs have aided the trust, provided that the trust shall, quote, on its own initiative, quote, take steps to preserve such privileges, meaning privileges associated with disclosures in the course of settlement. That's joint appendix 8, page 3 of the district court's opinion. Sure, Your Honor. And that's the background section. When you get to actually the analysis of the motion to quash, the only analysis that the district court provides on why it's granting the motion to quash is its erroneous reliance on the access case, when, if anything, access supports it. Concerns about privacy. Any concerns about privacy in that context? In the context of the access decision. Even there, I would respectfully submit it didn't talk about privacy apart from access. Okay. Thank you very much, Mr. Francisco. Thank you, Your Honor. I'll hand back that rebuttal. Good morning. May it please the Court. My name is Beth Mosco-Schnall from Ballard Spire, and I'm here on behalf of the 10 trusts. Would you like me to start in any particular area? Should I just ask? Actually, I would like you to start with something that's not directly an issue, but it's been troubling me a little bit. I don't think the motion to transfer was part of this appeal. Maybe I'm wrong about that, but I didn't know where they were arguing or had appealed that specific thing. But you've relied heavily on Rule 45, and Rule 45 has an advisory committee note that says, in some circumstances, transfer, meaning transfer from the local court back to the court issuing the subpoena, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Why isn't that exactly the circumstance here, that this is a case where it was litigated, the issues were fully aired, and if the district court had some concern, the right move was to send it back to the North Carolina Bankruptcy Court, not quash the subpoena? Well, first of all, the language says nay, and the court exercised its authority and discretion not to do that. Yeah, and I don't think anything I just said, so it had to do it. But this is the advisory committee saying, if you, the local court, think you've got something to do under Rule 45, if the issuing court has already looked at that, you know, then especially where that's happened and the issues are tied up with the underlying litigation, send it back. That's the sensible thing to do. Why doesn't that speak to the exercise of discretion that was undertaken here? Because I think what happened here is that the court, you know, it was looking at the locality concerns, and these are the bulk of the trust, seven of the ten trusts are Delaware trusts, and their TDPs, which cover the privacy concerns, were mandated. What difference does it make that these are Delaware trusts? What relevance does that have to the work that was undertaken by the North Carolina? If that were the rule, then any local court could say, you know, we're going to hometown you because these people are our people. What is the relevance of them being Delaware trusts? It's not so much a Delaware trust. It's the part that the TDPs were approved by the district court, and I think the court took ownership of that and said, okay, these were approved by this court, and therefore we are very concerned about the privacy rights of these claimants whose data is taken by the trust, it's held by the trust, under an agreement that says we have a fiduciary duty to keep it confidential, and yet here's disclosure. And I think that's what the court focused on was the privacy concerns, and I think that's why he decided to keep that. Which were addressed in North Carolina, right? Well, but under Rule 45, the judge decided, which I have a different opinion about Rule 45 in that I think what happens is Rule 2004, it's a lot like what Judge Krause was saying, that 2004 has one standard, Rule 45 has another. So this court had... Then what's the point, right? It seems like you've treated both here and it's like a Rule 45 one. I mean, if they have different standards, why all the bloodbath in North Carolina over privacy and so on? Why not just move to Quash under 45? Because Rule 45 does have a different standard. It's broader, and it's exactly, and I had this argument before you said it, Your Honor, but the relevance is broader under Rule 2004. And so what happens is the two can coexist because when you're looking at Rule 45, you say, okay, broader relevance, but once you overcome the relevance hurdle, then we can look at Rule 45, look at the factors there. In a normal situation where you have a subpoena that's issued just from the clerk's office and nobody looks at it, then under regular Rule 45, it's a fairly narrow situation, right? There's procedural safeguards. 2004 doesn't have that. Then in North Carolina, why didn't you just say to the bankruptcy judge, look, this is relevant. Give us our examination. And then fight over the Rule 45 issues in the compliance court. It seems like you're the ones who, the trusts are the ones who made the bankruptcy proceeding into a fight over privacy. Well, first of all, we were not in the bankruptcy proceeding, and I want to make clear that we never stipulated that the DCPS was our agent. There's no facts on the record that say that the DCP was our agent. Wait a minute. When you say there's no facts that say they were your agent, it's true there's a footnote, which you've cited, where they say, well, we're not speaking for the trusts. But the trusts, I want you to get to Judge Porter's question. So I'll just put this out here for a moment so you can come back to it. Assume for the sake of discussion that we thought there was some relationship there between these ten trusts and their creature, the facility. Now, if we thought that was the case, what's the answer to Judge Porter's question if the trusts through their instrumentality or the facility, I know you don't agree with that, but assume it for the sake of discussion, if the trust through their instrumentality litigates the Rule 45 issues in North Carolina, why should they be heard to litigate them a second time in Delaware? If you say that the DCPS was our agent, and if you don't want to talk about issue preclusion or privity in the fact that they were never raised. We're going to get to all that. First of all, the matching claimants were not in the bankruptcy court, so that issue still stands. They've got counsel here, and I understand that, but from the trust perspective, if you accept the premise, it's sort of game up, right? Potentially, although what's interesting to me is the fact that there's also a right to appeal, and so if you appeal, you can raise the same issues, so why couldn't you also just raise the issues under Rule 45? Because it's not an appeal, right? There's a method for appealing, and it's not an appeal. If you litigate and you choose to litigate, you should have to live with what you litigate. If the question is if there's a finding that the DCPS was our agent, do we lose? Yes. We're left with a matching claimant standing. All right. Now, assume it's not the agent relationship, but it is one where privity is strongly in question. Can you help us understand who the members of the facility are? It's an LLC. Who are the members? It's not on the record, Your Honor. Well, can you tell us who the members are? I cannot because I do not know. You don't know who it is. If it turned out to be that the members of the facility LLC were the trusts, would that be relevant? Is that something we should ask for supplementation on? Because it kind of goes right to the heart of the assertion that we had nothing to do with that, that the trusts are making here. Okay. First of all, the fact that companies are related to one another does not necessarily mean that one sent the other to court to appear on their behalf. No, but if the members are the trusts, isn't it odd to say they don't speak for us? If the trusts are the members, then the facility is the trusts because the facility doesn't exist out there in the ether. It exists at the will and at the direction of its members. So knowing who the members are could be pretty important to deciding this fundamental issue, couldn't it? It could be. But I want to get back to the fact that they didn't raise that argument well when they do snowpacks in support of it. Well, yeah, when you say there's no facts in support of it, it is in the record that the facility was created by the trusts to administer the trust's responsibility. That's in the record, right? I want to point out the fact that they put that in the record in their appellate brief and they asked the court to take judicial notice of it. They didn't raise it below and they never brought it to the district court's attention. All right. Well, they've made the argument to us. So I just want to get past what seems to be implicit in your response, which is it's not really in the case of who cares. It is in the case and it seems significant. So I would like a supplemental submission from the parties identifying who the members are of this LLC because it seems to me to go directly to the question of were these people agents or were they imprivity? The fact that they blew it before doesn't mean it's not relevant. I'd like to know what it is. But leaving that to the side for just a moment, assume we didn't know or didn't need to know or didn't want to know who's behind the facility. Isn't it the case that, and you heard Mr. Francisco quote at length from certain documents, that the trusts have said the facility is acting on its responsibility to us? You heard him quote the language. It was fulfilling its responsibility to us in taking the position that it did. Does that not acknowledge imprivity? I disagree that it acknowledges imprivity. Both the trust and the facility have two different interests involved here, right? So first of all, the trust's interest is in protecting the fiduciary duty to protect the claimant's information. So their relationship is directly with the claimant. And if they themselves did not come forward and try to protect that data, they could potentially be sued. There could be all sorts of things that happen. There could be other claimants that don't want to disclose their information. That's true, and I don't disagree with that. The question is, are their interests directly aligned with yours? And they are acting in part because, in part at least, because they have a contract. Whether it's a fiduciary obligation or not, they've got a contractual obligation to you, which has them acting in a manner that is directly aligned with your interests. Well, first of all, as you pointed out, the contract's not in the record. But the contractual duty is that they process claims. They take and process claims. That doesn't speak to the fact of whether or not they're going to court to represent us. I've moved away from agency, right, when you say they're not going to court to represent us. That's an agency argument. I'm talking about a privity argument now. The contract itself isn't in the record, but there's plenty of representations from the parties that they were acting in fulfillment of contractual obligations to you. And that's why I'm trying to ask the question, perhaps inartfully, why isn't that enough to establish a privity, a sufficient identity of interests and an adequacy of representation under Taylor to make it sensible to say this was litigated in a fashion that should bind the trusts? They do have very similar interests, but their interests are not completely aligned. And there's a lot of parties that have the same interests. Where's the daylight? What's the difference on this point on protecting the data privacy, which seemed to be the great interest, the central point, on that point, protecting data interests, where's the daylight between the facility and the trusts? The only daylight is the motivation for why they would want to protect it. But they both had an interest in protecting the data. And one last question. I've dominated. I apologize to my colleagues. The district court said on page four, this is Joint Appendix 9, Best Walls served the 2004 motion on the DCPF but not on any of the trusts. Isn't that inaccurate? It is inaccurate, Your Honor. Okay. And isn't that a fundamental point that all by itself should make us wonder, hmm, maybe this needs to go back? Should this go back to the district court so they can properly assess whether one of the procedural protections for the trusts, namely that it was clearly on notice, is something to be considered in deciding whether or not they should be bound, the trust should be bound by what happened in North Carolina? Your Honor, there's case law that says, and Simon v. Fee is one of them, it says you can affirm a district court for any reason supported by the record. And California v. Rooney says an appellate court reviews judgments, not statements and opinions. And if you look at this, if you look at the judgment here, the court came to the right result. So what the court did is it found that there were additional protections and safeguards that were needed for this personal data. I mean, we're talking about matching claimants' names, their social security numbers, dates of birth. We're on board with all that. You've skillfully briefed the matter. But that's not the answer to my question, which is if the district court was laboring under a misapprehension as to a central fact, namely whether the trusts knew what was going on in North Carolina or not, doesn't that create a real problem that, at a minimum, would prompt us to say, the district court ought to look at this on correct factual information before it starts weighing these interests and deciding whether or not there should be issue proposals? No, I disagree with that. I think you can look at the judgment as a whole and say that's the right result. And, in fact, you know, one of the big arguments from Beth Wall was that, you know, they couldn't possibly survive. They couldn't get what they needed unless the 2004 order was upheld. And yet, since then, they've acknowledged the sampling is just fine. In their 59E motion to the district court, which is the joint appendix at 1248 to 1264, they said that the parties in the estimation proceeding were already using a 10% random sample of the approximately 15,000 claimants that Beth Wall's experts already constructed. And yet, that same motion, they sought the court's approval of a revised subpoena that sought a random 10% sample of those. Yeah, that's all going to the merits of the district court's decision, which, if it stood independent, might be perfectly sensible. I mean, that's not what I'm trying to engage you on. I'm not sure my colleagues have a different view. They may want to engage you on something else. But if we were just looking at the district court's decision in the abstract, would you say, well, that doesn't make any sense at all? No, he's making judgments that have some precedence, whether the other side thinks the precedence he's looking at, or he's looking at it in the right way or not. But I don't have an argument with you on the substance of whether you could justify those or not. That's not the issue. The issue is whether, having made the pitch about these same issues in North Carolina, the facility's work was done with sufficient tie to the trust that there shouldn't be any revisiting of these issues again. Because that's just duplicative, and that's exactly what issue preclusion is meant to avoid. So that's why I'm concerned that the district court had this misunderstanding that the trusts, they didn't even know about this thing. No, they did know about this thing. And that's why I think the issue preclusion part is the most significant. So I'll just finish with this. What's your best pitch against privity, not against agency, but against privity? That there is daylight between the two parties. They have different interests at stake. With respect to the privacy of the data? No, not with respect to the privacy of the data, but they have different motivations for why they need to protect it. Does privity ask about interests or motivations for the interests? No, I understand that, Your Honor. There's not a great argument about privity, but it wasn't. Our strongest argument about privity is that it was waived. They never waived it. Could we go back to – I asked a question earlier, and I think we got hung up on the difference between the facility and the trusts. Which, for purposes of my question, doesn't matter. It seems as though maybe you really don't disagree with your friend that there's no difference analytically between Rule 2004 and Rule 445. That under Rule 2004, just like under Rule 45, you can fight about privacy and privilege and burden and all that. Do you agree with that? No, I think – Ben, why did you raise those issues in the bankruptcy proceeding the way – or why the facility the way that it did, instead of waiting and fighting it out in the compliance court under Rule 45? Your Honor, I'm sorry to say this again, but we were not in the bankruptcy court, and I can't speak for the facility and why their attorney did what their attorney did. Okay. We asked both parties to take a look at footnote 3 in that filing in the bankruptcy court. And in terms of who is speaking for whom, that seems to suggest that the facility was speaking on behalf of the trust. What do we do – aside from privity, what do we do with apparent authority and ratification where there are representations like that that are being made about the position of the trust in the bankruptcy court, and that the trust did have notice because of service of the subpoenas and chose to remain silent? Well, first of all, the document that that footnote appeared in is clearly titled that it was submissioned by non-parties, Manville Trust, and the DCPS. And then in the very first page of that document, it defines non-parties as Manville Trust and DCPS. And the footnote itself says, for the avoidance of doubt, references here into the non-parties should be deemed to include the DCPS client trust. Any specific references to the DCPS client trust are for emphasis only. And I assert that that footnote makes much more sense if you insert the word not. So for the avoidance of doubt, references here into the non-parties should not be deemed to include the DCPS client trust. And any specific references to the DCPS client trust are for emphasis only. It makes way more sense when you add the not, so it could just be a typo. The other thing is that it could be read that the footnote only applies to the bullet points that follow, which talk about additional protections that should be included in the subpoena, because it wouldn't make a lot of sense if certain subpoenas like the subpoena to Manville Trust included certain protections while the subpoena to the other trust didn't include the same protections. But either way, it's just we don't really know what they meant. I mean, I think it's clearly that it probably was a typographical error when they left out the word not. But again, it wasn't talked about in the district court. In response to my colleague's questions, you answered that there's this common issue litigated as privacy of the data. Do you concede that the arguments that were made as to the confidentiality of commercial documents by the facility cover the same ground as the arguments made as to privacy in the district court? And from your position, were those arguments in the district court related to a settlement privilege or simply generalized privacy interest? In both in the bankruptcy court and in the district court, we raised the privilege issue as well. We cite to the TDP, and Mr. Hogan may address this, but he also cites that it's covered by Rule 408 and should be treated as confidential settlement discussions. When you say both in the bankruptcy court and the district court, what do you mean? I mean that the privilege issue was raised in bankruptcy court, and the privilege issue was also raised in the district court papers. The privilege was raised in the North Carolina bankruptcy court, and then it was raised again in the district court? Yes. Yes. Okay. Privilege raised by the facility in the bankruptcy court? I think they made an argument. Well, remember, they were also representing the Mansfield Trust, which also has a TDP. So they brought up the issue of the TDP states that it should be treated as confidential settlement materials. And I think sometimes in their statements, I will say that the D.C. Council was not always artful in saying trust versus trust because he was representing one trust. All right. Anything further? No. Okay. Thanks very much, Ms. Muskelson. Thank you. I appreciate your argument. We'll hear from Mr. Hogan. Good morning, Your Honors. Daniel Hogan. May it please the Court, I'm here on behalf of the matching claimants. Yeah. And can I start by asking you, who are the matching claimants? Because I got a standing issue right out of the box. Should I sit down, Your Honor? No. You just stay right there and answer this question. What? What? Yeah. Since the matching never happened, how do the matching claimants know they're matching claimants? And how do we know that they know that they're matching claimants and, therefore, have any right to be here? And then, therefore, how do I know? Yeah. Why am I here? I get it, Your Honor. So the matching claimants are a pool of individuals who asserted historical claims against best law. They have claims that have been resolved through either group settlements or verdicts against best law. They're identified as individuals who submitted claims to the trusts and that are then also individuals who have asserted claims against best law. So that's who they are. And is that identified somehow in the record? Is there a place where there's some sort of representation? I know you wouldn't say anything that wasn't true, so I don't know if I understand what I'm suggesting, Mr. Hogan. But I've looked and I just haven't seen it and maybe just haven't found it. But it just seems odd to say, hey, trust us, we've got an interest. Isn't there something, some kind of formal representation of some sort that needs to be made rather than just a filing that says we are the matching claimants?  But remember, just so you have the complete understanding of the context of this, because context is critical. This is not our context. This is Best Law's construct, right? If you go back and look at the 2004 order that they prayed for in the bankruptcy court, they characterized, it mandates that the facility would notify the matching claimants' counsel. So they know who that is, of record, that the relevant trust had received subpoenas from the debtor. The facility shall inform such counsel that the matching claimant data will be produced if they, undefined, do not notify the facility and the debtor by May 12th that the matching claimant intends to file a motion to quash. So it's their construct. But didn't that assume that there was some sort of program that was run and there would emerge from that program a set of people that you could say, okay, this is the matching claimant set. They made these claims before. We ran it against this database with the trust. Now we have a set of matching claimants. That seems to be what that anticipates. Indeed. And that never happened, right? It never happened officially, Your Honor. Behind the scenes, 73 law firms came to me and said, we have clients that are matching claimants under this construct, and we want to retain you to represent our clients' interests. I cannot tell you, Your Honor, as I stand here today, that I've spoken with any individual matching claimant. I'll be frank. But I was retained by counsel for those matching claimants to pursue this matter. Okay. All right. Your Honor, if I could, I'd like to address the conclusion issue, because I think it's an important issue. As I think you've articulated. The doctrine obviously prevents parties from relitigating claims. But as you've heard, the matching claimants did not appear in any capacity in the North Carolina litigation. Is the facility an entity that acts with the fiduciary responsibility for the matching claimants? Tangentially at best, Your Honor. The facility's obligation is to the trusts. There's no privity between the facility on one hand and the matching claimants on another. So their only responsibility is to the facility. I'm sorry, the facility? Thank you. I'm sorry. No problem. We should ask what their preferred pronoun is. I'm going to use the plural today, but you know I'm speaking about the facility. Yes, sir. Your position is their only responsibility is to the trust, or do they have a responsibility to the claimants? You said tangentially. So that acknowledges, yeah, they've got a responsibility. The claimants submit their claims to the trusts. The facility manages the information that the claimants submit to the trusts. Their only fight, their complete fight, was with respect to the privacy interests of the claimants, the matching claimants, whoever would be matched. That was their whole fight in North Carolina. It was, Your Honor, but remember, too, that the 2004 order mentions at least six times that a motion to quash would likely come forth from the process. The court in North Carolina recognized at least six times in its 2004 order that there would be motions to quash brought by the matching claimants, and I think that's a recognition by that court that those claimants were not before that court. And was it anticipated that the motions to quash would result in a re-litigation of the same issues? Anticipated by whom? By the court, North Carolina court, because I understand you to be saying the bankruptcy court in North Carolina in this 2004 hearing understood, this real 2004 hearing explicitly recognized that the matching claimants would have interests and that they would have an interest in a motion to quash in the District of Delaware. That's what I understand you to be arguing, and I think the documents are pretty clear, and you're right about that. Now, the question is, did that recognition that there might be something that came up that warranted a motion to quash, did you think that the bankruptcy court, is there something in the record that shows the bankruptcy court anticipated that that would result in a full-scale re-litigation of the very issues brought before it? Well, Your Honor, by way of example, I can explain to you that in preparing for this hearing today and in looking at the information in the letter that the court sent to us on the issue of Simon and FIA, that my colleagues and I were forced to go back and look at the docket in the North Carolina bankruptcy case. And just yesterday, Your Honor, I learned that the North Carolina court, in fact, entered a separate 2004 order relative to a PIQ, or personal injury questionnaire, that was sought by the debtor, Bestwald, in that case. And it relates to that the Asbestos Claiming Committee appealed the order, this PIQ 2004 order that the bankruptcy court issued. And in response, Bestwald, in that PIQ order and the resultant appeal in North Carolina, argued that Rule 2004 orders are non-final and are not subject to discretionary appeal because they do not involve an issue of pure law. And that's in the underlying bankruptcy case, Your Honor, at docket 1735. Those facts undercut this issue preclusion argument that we're hearing today from Bestwald. Well, they're claiming that the 2004 order is purportedly final to bind the trust and imagine claimant, but they acknowledge that 2004 orders are non-final. So are you making an argument against jurisdiction in this court? Are you saying we're hearing an appeal from a non-final order, that there was a non-final order in North Carolina, and then there was a motion to quash that non-final order, and that turned it into a final order, and we do have jurisdiction? Or does your statement have no jurisdictional implications at all? I don't know that it has jurisdictional implications, Your Honor, except to say that the issue of preclusion arguments, they can't argue it both ways. I can ask this court to take judicial notice of the fact that as it relates to a 2004 order that was issued in North Carolina, that Bestwald has argued that it's not final, but then they can come into this court and argue that a separate 2004 order in the same case is in fact final and should be given full deference. Do you have any other issues you want me to address, Your Honor? Okay, thanks very much, Mr. Hogan. Thank you. Appreciate it. Mr. Francisco is the model. Would you start, please, with what Mr. Hogan just said? Speaking out of both sides of your mouth there. Sure. Two responses, Your Honor. One, there is appellate jurisdiction because there's an exception to finality for this type of rule. We cite the relevant cases in our jurisdictional statement. But two, finality has different meanings when it comes to issue preclusion and when it comes to a final judgment that is appealable. For issue preclusion purposes, finality requires that the lower court essentially reached its final conclusion on the particular issue, and that's when issue preclusion principles kick in. Turning to the privilege issue that we were discussing at the end of my argument, I point you to page 36 of the joint appendix where this is their motion to quash, the trust motion to quash, where they assert, quote, demands for the production of personal private information require heightened scrutiny. And if you read down the paragraph, they specifically quote a case that said, the Zamorano case, that says, quote, while clearly no federally recognized privilege stands in the way of obtaining this information, the shield of confidentiality that normally protects sensitive peer-reviewed records justifies greater caution by the court. Let me ask you to respond to another point from Mr. Hogan, which I take it is that even if we were to say there was privity with the trusts, the North Carolina Bankruptcy Court recognized and anticipated that there would be a motion to quash by one or more of those individuals, planned for it, and that you shouldn't be heard to complain about it because that was in the order that you got. Because it doesn't undermine the finality of the ruling, just like any party can file a Rule 59 or Rule 60 motion to upset a judgment. It doesn't undermine the finality of the ruling. Then what was the purpose of saying to the world, hey, matching claimants, we know you're not here. We know you're not here. So I'm setting up a framework for you to protect your interests when you get to Delaware. So two responses, Your Honor. The first is, the footnote really is just the truth. They can file a motion to quash. We've never said they can't file one. The question is, how do you resolve it? And that's my second point. Issue preclusion principles always and only arise in the second court. The first court doesn't have the facts before it to decide whether issue preclusion applies. That's why it's under black-letter issue preclusion law. It's the type of thing that's always litigated in the second court. And that's what happened here. How is there privity to prevent the matching claimants from making the very arguments that they've made in the district court? If the bankruptcy court recognized they're not here, they're going to file something. They're going to let them file something. How is it that issue preclusion has anything to do with them? Because their interests were fully and adequately represented by the facility in the first proceeding. If I heard my friends on the other side correctly, I think I heard the attorney for the trusts concede that if there was privity. Leave the trusts out of it. Oh, sure. I'm asking you about the matching claimants. I understand your argument and I understand their argument for and against privity. I'm trying to get you to address what I understand the matching claimants pitch to be, which is that they're not in privity and we weren't there. And, in fact, the North Carolina court knew we weren't there and set up a method for us specifically to come forward and do what we're doing. So it can't possibly be an issue preclusion. So I would point you directly to page 12 of the matching claimants brief where they say that the district court acknowledged that the facility had a duty to the trusts to use its best efforts. And then it continues and that the trusts in turn had fiduciary duties and fiduciary obligations to matching claimants to protect the confidentiality of their information. So the trust that he wants removed? Well, Your Honor, what I would point you to is Justice Scalia's opinion for the court, I think in the Rapinos case where he said it's turtles all the way down. Here you have the trusts that conceivably have a fiduciary duty to protect the matching claimants data. The way they did that here was through their fiduciary, the facility, which then had a duty to protect everyone's information because, after all, we are talking about the same amount of information. So it really is turtles all the way down where you have this interlocking set of relationships. Is it the case that privity between the trusts and the facility means as a matter of law that there's privity between the facility and the matching claimants? Not in a vacuum, but yes, when here you're talking about a very specific set of information and everybody's trying to get the same set of information. The trusts have a duty to protect the matching claimants' information. The facility then has a duty to protect that same information by way of its obligation to the trusts, who in turn have an obligation to the matching claimants. I'd also point out a couple things. One, I agree with your initial point that I'm not sure why the matching claimants even have standing to raise this issue. This is a subpoena that's directed to the trusts, and it's the trust's data, and it's the facility that holds the data as the steward to the trust. But secondly, they sought to join the motion to quash below anonymously, and I don't think they even attempted to satisfy the requirements of Rule 10a. So I think you can put all of that to the side for those two reasons as well. What is your privity argument if some but not all of the trusts are members of this facility? Well, Your Honor, I think I would probably be making the same argument because there are different categories of privity. One of them, these are all in the nationwide case from this court. One of them is when you do have this substantive legal relationship that's grounded in contract. Another is one where one party fully and adequately represents the interests of the other party. And here you have a case where the interests are perfectly aligned, and so I would argue that privity would apply in all of those contexts as well. And here I do really think this is a case where we've got a series of stipulations from the mouths of my friends on the other side that establishes the nature of that fiduciary relationship. Just to be clear, your argument turns on there being privity or some sort of agency. You're not making the argument that simply because the trust had noticed of these arguments being made that they had some sort of duty to intervene at the Rule 2004 stage? That's correct, Your Honor. We're arguing that because of the nature of the fiduciary relationship amongst the parties. That's what made the facility there essentially on behalf of the trust imagine claimants. And I also want to emphasize, we're also arguing that wholly apart from this issue, preclusion issue, the lower court clearly got it wrong by relying on the access decision to reach its conclusion. When Bestwall moved for the examination in the first place and then the facility objected on the basis of privacy, why take the bait, as it were? Why not just say, look, bankruptcy judge, this is relevant. It goes to the administration of the estate and financial condition of Bestwall. Give us the stuff, and if they want to move to Quash, they can. Why join that fight in the bankruptcy court? Well, Your Honor, because they raised the issue, and we thought it was a legitimate issue to raise. I mean, we agreed with a large number of limitations to protect the privacy of this data. We have no desire to invade their privacy. We do have a strong interest in trying to find out if the same kind of misconduct that occurred in the Garlock case was occurring in this case. And the only way we can do that is if we can figure out whether the people with whom we've settled with in the past subsequently made claims against other trusts and then look into whether there was that same kind of withholding of evidence that the district court found in Garlock. If you've, in fact, agreed that 10% sampling is adequate, is the whole fight at this point about whether it's anonymized before or after it's turned over to your agent? I don't think we've agreed that the 10% sampling is adequate. We're trying to identify as many instances of apparent or alleged misconduct as we can find, and we would want to look for as much as we can find. And even putting that to the side, we're already having disputes over the method of drawing the sample. So there are all kinds of problems with the sampling provision. I don't believe we've conceded that at all, Your Honor. My question actually didn't go to the importance of privacy. It went back to the distinction, if there is one, between what happens in a Rule 2004 motion in proceeding and then what happens in a Rule 45 motion to quash. Couldn't you have just said, look, it's relevant. We don't have to talk about motion to quash issues. That's down the road if they move to quash. Just give us our stuff. We're entitled to it under Rule 2004. I don't think that would have been a well-taken argument in the bankruptcy court, Your Honor, because I do think that bankruptcy courts do take into account those issues. And if we had just showed up and said, you know, poo-hoo privacy, that's not relevant. He would have just said, obviously, you're wrong on that. She would have said. All right. We thank counsel for argument. I do hate to put people to extra labor, but I would like that supplemental submission that identifies the members of the LLC. If there's some reason, some privilege, some basis on which you can assert we're legally entitled to protect this information, go ahead and assert that and tell me what it is. And if you've got an argument for why it's irrelevant information, go ahead and say that too. Do you need to file under seal? File under seal. Do what you need to do in that respect. But please provide us with that supplementation. If you could do that in the next, say, two weeks, that would be of assistance. Okay? Your Honor, would you like us to provide that supplementation as well, or would you like us to respond to what they file? Well, if you know what it is, you feel free to do it. But I think the sensible thing is for the trusts to provide that information, because I believe they will, there isn't, whether there's an agency relationship with respect to litigating, there's certainly an agency relationship between the trusts and the facility, and they can get that, and they can provide it to us in two weeks, and then you can respond if you think you need to. All right? If you're going to respond, do it within a week. All right? Thank you, Your Honor. All right. Thanks, counsel. Appreciate the argument. We've got another advisement. Please rise. This court stands adjourned until Tuesday, March 22nd at 9 a.m.